144          NEBRASKA REPORTS.          [VOL. 77

Farmers & Merchants Irrigation Co. v. United States Fidelity & Guaranty Co.

FARMERS & MERCHANTS IRRIGATION COMPANY, APPELLEE,
    v. UNITED STATES FIDELITY & GUARANTY COMPANY,
    APPELLANT.

FILED JUNE 20, 1906.    No. 14,407.

Principal and Surety: BONDS: ESTOPPEL. Where a bonding company,
    with knowledge of an informality in the execution of a bond by
    its agent, receives and retains the premium paid for the bond,
    it is estopped in an action on the bond from urging such in-
    formality as a defense.

APPEAL from the district court for Dawson county:
BRUNO O. HOSTETLER, JUDGE. *Affirmed.*

*George C. Gillan,* for appellant.

*E. A. Cook,* contra.

JACKSON, C.

The appellant is a bonding company. It gave power of
attorney authorizing Charles F. Horner, together with
George C. Gillan, both of Dawson county, to execute and
deliver bonds required in judicial proceedings. On
October 5, 1903, the appellee recovered judgment before
the county judge of Dawson county against Andrew
Anderson, and, for the purpose of prosecuting an appeal to
the district court, Anderson and his attorney applied at
Mr. Horner's office for an appeal bond. Horner was absent,
but his clerk, after taking a property statement from An-
derson and receiving payment of the premium, prepared
and delivered to Anderson's attorney a bond in due form,
signed: "United States Fidelity & Guaranty Co., By
Chas. F. Horner, S., Attorney in Fact." There is a con-
flict in the evidence as to the fact of delivery; Horner's
clerk testified to having told Anderson's attorney that it
would be necessary to secure the signature of Mr. Gillan
to make the bond effective, while the attorney asserts with
equal force that no such statement was made. His tes-
timony has some support in the fact that no blank space
appeared on the bond for Gillan's signature. The bond

was presented to the county judge, and by him approved October 10, 1903, and Anderson was thereby enabled to, and did, prosecute his appeal, which on March 13, 1904, was dismissed, and the fact of dismissal certified to the county court, where execution was issued and returned, "No property found." From a judgment on the bond, the surety company appeals.

It interposed the defense that the power of attorney authorized the execution of bonds only by the joint act of Horner and Gillan, neither of whom, it is alleged, signed the bond in suit. It was disclosed in evidence that the bond, while appearing on its face to have been executed on behalf of the company by Horner as attorney, was in fact signed in his name by the clerk. Mr. Anderson's attorney, who was a witness on behalf of the appellee, testified to a previous conversation with Mr. Horner relative to procuring bonds in judicial proceedings; he was told by Mr. Horner that his clerk had authority to execute the bonds. This statement is not denied, and in view of the attitude of the appellant we do not think it important. Mr. Horner was informed of the execution and delivery of the bond on the next day after the delivery. His testimony in that respect is: "Q. When Mrs. Shanklin told you about the execution of the bond, did you report its execution to the company? A. I did. Q. When? A. Immediately or nearly so, within a very short time. Q. Did you report to them how the bond was executed, how it had been signed, or did you send them a copy of the bond? A. I sent them the application, and they then asked for a copy of the bond. Q. Did you furnish them a copy of the bond? A. I did. Q. Did you receive any communication from the company? A. I did. Q. Is it not true that the company complained that you had not taken security enough for this bond? Wasn't that the complaint that the company made? A. That is true. Q. Is it not true that the company did not make any other complaint, except that you didn't take security enough? A. That is also true. Q. You say you tendered back to Mr. Rhea the money. When did you do

that? A. Well, it was a long time after this bond was executed, I really cannot say when. Q. By a long time, what do you mean? Several weeks? A. Yes, sir; it was more than several weeks. Q. Several months? A. I think so; yes, sir. Q. Did you go to the county judge and say to him that the bond had not been properly executed? A. I did not. Q. Never spoke to him about it? A. I think I did, but it was after the bond was approved. Q. How long after? A. It was some time after. Q. What do you mean by some time? A. Well, it was months after. Q. When you learned of the execution of this bond, did you go to the plaintiff in this case, or to myself as its attorney, or any of its agents, and inform them that the appeal bond had not been properly executed? A. I did not, unless Mr. Rhea was one of the parties named."

The record discloses that Rhea was attorney for Anderson in the proceedings where the bond was obtained, and therefore did not represent the appellee.

Concerning the complaint about the bond, Mr. Rhea testified that there was a complaint made some time after the bond had been approved, that the company was not satisfied that it was secure, and requested him to have Anderson come in and give a chattel mortgage; that no one on behalf of the bond company ever tendered the premium back to him. It appears then that, with a full knowledge of all the facts, the bond company retained the premium, and made no complaint of any informality in the execution of the bond, and it should now be estopped from insisting on any such informality as a defense. It enabled Anderson to prosecute his appeal, the county judge, in good faith, approved the bond, and the appellee, relying upon the sufficiency of the bond, refrained from any attempt to enforce its judgment until after the dismissal of the appeal.

It is clear that the judgment of the district court is right, and we recommend that it be affirmed.

DUFFIE and ALBERT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.